NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | Criminal Action No. 12-00473 (JAP) |
| ELVIDO FRANCO-FELIX, | : | **OPINION** |
| Defendant. | : | |

PISANO, District Judge.

Before the Court is Defendant Elvido Franco-Felix's Motion to Suppress evidence recovered in connection with a search of his vehicle and an apartment located at 555 Mount Prospect Avenue in Newark, New Jersey. Mr. Franco-Felix also seeks to suppress any post-arrest statements made following the search. The Court held a suppression hearing on October 25, 2012 and heard oral argument in this matter on November 30, 2012. For the reasons discussed below, the Court finds that the search of the vehicle was proper, but the search of the apartment at 555 Mount Prospect Avenue violated Mr. Franco-Felix's Fourth Amendment right to be free from unreasonable searches and seizures. The Court also finds that there are no post-arrest statements at issue. Therefore, the Motion to Suppress will be granted in part and denied in part.

I.  **Background**

On September 8, 2011, Mr. Franco-Felix was charged by complaint for possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and on July 10, 2012, he was indicted for the same offense. By motion dated September 28, 2012, Mr. Franco-Felix moved to suppress the physical evidence that was recovered from a search of his vehicle and apartment on September 7, 2011 and to suppress any post-arrest statements that were

made following his arrest. On October 25, 2012, the Court held a suppression hearing at which Officer Jose Valentin of the DEA Task Force testified for the government and defendant Franco-Felix testified on his own behalf. Notably, Officer Terence McCabe, the other officer at the scene of the traffic stop on the date in question, did not testify. Nor did any of the five or six other task force officers who were present at the apartment when the search was conducted.

In this case, the Court is presented with vastly different versions of what occurred on the afternoon of September 7, 2011. The Court must look at the totality of the circumstances, and determine which version of the facts is credible and has the appeal of logic and common sense. The following summary outlines the essential elements of each party's version of the facts.

<u>Officer Valentin's Testimony</u>

The government called Officer Valentin, a Passaic County detective and member of the DEA task force, to the stand. Officer Valentin testified that members of his task force had been conducting surveillance of Mr. Franco-Felix for several days prior to September 7, 2011 and on the afternoon of September 7th, officers followed Mr. Franco-Felix from 555 Mount Prospect Avenue in Newark to several other locations in the vicinity. At approximately 2:00 pm, Officer Valentin and Officer McCabe were conducting surveillance of Mr. Franco-Felix, when they observed him drive through a red light at the intersection of Central Avenue and Passaic Avenue in East Newark, New Jersey. After Mr. Franco-Felix passed through the intersection, the officers, who were driving in separate, unmarked vehicles, activated the lights and sirens on their vehicles and pulled him over on Central Avenue, approximately 75-100 feet past the intersection.

Officer Valentin approached Mr. Franco-Felix's vehicle on the driver's side and Officer McCabe approached on the passenger side. They wore plain clothes and Officer Valentin had a gun in his holster. As they approached, the officers observed Mr. Franco-Felix acting nervous and sticking something in between the seat and the console. Officer Valentin – who is bilingual –

began speaking to Mr. Franco-Felix in English and observed that his English skills were limited, so he then spoke to Mr. Franco-Felix in Spanish for the rest of the encounter.  Officer Valentin requested Mr. Franco-Felix's driving credentials and Mr. Franco-Felix provided him with a New York driver's license and an expired insurance card.  At this point, Officer Valentin asked Mr. Franco-Felix if he had anything illegal in the car and Mr. Franco-Felix said no.  Officer Valentin asked if they could search the car and Mr. Franco-Felix said "go right ahead."

Officer Valentin told Mr. Franco-Felix to step out of the car and he and Officer McCabe proceeded to search the interior and the trunk of the vehicle.  In the interior of the vehicle, they found several cell phones, including one stuck between the seat and the console, which they believed to be the object that Mr. Franco-Felix was concealing earlier.  In the trunk of the vehicle, they found two throw pillows with the stuffing partially pulled out.  Officer Valentin observed a small compartment in the pillows, which he testified is commonly used to conceal drugs and money.  Officer Valentin asked where Mr. Franco-Felix was coming from and he replied that he was coming from his apartment, which was located at 555 Mount Prospect Avenue, Apt. 15D, in Newark, New Jersey.[1]  Officer Valentin asked if they could go back to his apartment to check if there were any more throw pillows in the apartment.  Mr. Franco-Felix said "sure," so Officer Valentin went to his vehicle to get a Spanish-language DEA consent-to-search form.  Officer Valentin filled out the form and specified both the vehicle they had just searched (a Toyota Yaris) and the apartment at 555 Mount Prospect Avenue, Apt. 15D as the locations to be searched.[2]  He gave the completed form to Mr. Franco-Felix, who read it and signed and dated it.  Officer Valentin and Officer McCabe signed the consent form as well.

At that point, Officer Valentin patted down and handcuffed Mr. Franco-Felix and placed

---

[1] Mr. Franco-Felix told the officer that he was heading to work at a barbershop in East Newark.
[2] Officer Valentin wrote this information in English.  The rest of the form was in Spanish.

him in the back of his vehicle. Officer McCabe moved Mr. Franco-Felix's car to the side of the road and then both officers drove in separate cars to 555 Mount Prospect Avenue, where another five or six DEA task force officers were waiting. Officer Valentin testified that Mr. Franco-Felix did not say anything during the drive to the apartment. Upon arrival, Mr. Franco-Felix gave Officer Valentin the keys to go in the front door of the building and they all walked upstairs. The officers entered Mr. Franco-Felix's apartment using his keys and conducted a search of the apartment.[3] In the apartment, they discovered a kilogram of cocaine, several pieces of luggage and shoes containing hidden compartments, a multi-use steamer and approximately $80,000 in cash. The officers read Mr. Franco-Felix his *Miranda* rights, placed him under arrest and transported him to a DEA facility in Newark for processing.

    A.  <u>Defendant Franco-Felix's Testimony</u>

Mr. Franco-Felix testified on his own behalf. Not surprisingly, his version of the facts is significantly different from that offered by the government. According to Mr. Franco-Felix, he was on his way to work in East Newark on the afternoon of September 7, 2011, when he was pulled over by Officer Valentin and Officer McCabe "for no apparent reason." Mr. Franco-Felix testified that when he arrived at the intersection of Central Avenue and Passaic Avenue, the stoplight was red and there was a green car stopped at the light in front of him. Once the light turned green, the green car drove through the intersection first and Mr. Franco-Felix followed. Several hundred feet down the road, the officers pulled him over.

The officers approached the vehicle and Officer Valentin asked Mr. Franco-Felix for his driving credentials. Mr. Franco-Felix provided his drivers' license and registration and told the

---

[3] There is some discrepancy in Officer Valentin's testimony regarding who actually opened the door to the apartment. On direct, Officer Valentin testified that Mr. Franco-Felix "took [the officers] right to the door, 15D. He used the key, [and] opened it." Tr. 22: 21-22. However, later on cross-examination, Officer Valentin testified that Officer McCabe had the keys when they arrived at the apartment building and "the doors opened." Tr. 48:6-14.

officer that his address was 555 Mount Prospect Avenue, Apt. 15D, in Newark, New Jersey. Officer Valentin then walked away to make a phone call.[4] The officers returned to the vehicle and Officer Valentin ordered Mr. Franco-Felix to get out of the car so that they could search the car. When he did so, Officer Valentin had his hand on his gun and spoke with a "very rough" attitude. He spoke rapidly in both English and Spanish and Mr. Franco-Felix did not understand everything he said. Without asking for permission first, the officers then searched the interior of the vehicle.

After doing so, Officer Valentin produced a blank DEA consent-to-search form and told Mr. Franco-Felix to sign the form so that they could search the trunk. Officer Valentin did not explain the form to him or tell him that he could refuse to consent. Nor did he mention anything about the apartment or ask whether they could search the apartment. Mr. Franco-Felix did not have an opportunity to read the form and he did not believe he had the option to refuse to consent. He also felt intimidated because Officer Valentin had his hand on his gun, so he signed the blank consent form at the bottom.[5] Officer Valentin then searched the trunk and asked whether the pillows in the trunk belonged to Mr. Franco-Felix. Mr. Franco-Felix said yes.

After the search of the trunk was completed, Officer Valentin handcuffed Mr. Franco-Felix and placed him in the back of his car. Meanwhile, Officer McCabe removed Mr. Franco-Felix's car from the side of the road and parked it in a parking lot. Officer McCabe kept Mr. Franco-Felix's keys after parking the car and both officers proceeded to drive to the apartment at

---

[4] Mr. Franco-Felix acknowledges that he told the officers his address, but it is not entirely clear from his testimony *when* he gave them his address. Defense counsel argues, however, that Mr. Franco-Felix provided them with the address at the same time that he gave them his license and registration. In other words, he asserts that when Officer Valentin left to make a phone call, he already knew the address. For purposes of summarizing Mr. Franco-Felix's testimony, the Court accepts counsel's position.

[5] Mr. Franco-Felix's testimony regarding his consent to search the trunk of the vehicle is somewhat inconsistent. On direct, Mr. Franco-Felix testified that he did not consent to the officers searching his trunk, rather, they told him to sign the form, so he did. Tr. 56:17-57:8. However, later on cross-examination, he said that Officer Valentin "asked me if he could search the vehicle and I said yes, he could do that, when he had me sign the form." Tr. 71:20-23.

555 Mount Prospect Avenue. Once they started driving, Mr. Franco-Felix asked Officer Valentin where they were going. Officer Valentin told him they were going to his apartment. Mr. Franco-Felix replied that he never authorized them to enter his apartment and that they only said they were going to search the car. Mr. Franco-Felix also stated that he did not even know why the officers had stopped him in the first place.

When they arrived at the apartment building, there were several other police officers there and the front door to the building was already open. They proceeded upstairs, where a few other police officers were waiting. The officers entered and searched the apartment and then placed Mr. Franco-Felix under arrest. Mr. Franco-Felix remained handcuffed throughout this time.

## II. Legal Standard

Federal Rule of Criminal Procedure 41(h) provides that "[a] defendant may move to suppress evidence in the court where trial will occur, as Rule 12 provides." Fed. R. Crim. P. 41(h). Rule 12 provides that suppression motions should be made prior to trial. *See* Fed. R. Crim. Pro. 12(b)(3)(c). The burden is on the defendant to establish the necessity for a hearing. *U.S. v. Santos*, 340 F. Supp. 2d 527, 533 (D.N.J. 2004) (citations omitted). A defendant who files a motion to suppress ordinarily carries the burden of proof. *U.S. v. Acosta*, 965 F.2d 1248, 1257 n. 9 (3d Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 12, 130 n. 1 (1978)). However, where a search is conducted without a warrant, as is the case here, the burden shifts to the government to demonstrate by a preponderance of the evidence that the warrantless search was conducted pursuant to one of the exceptions to the warrant requirement. *Santos*, 340 F. Supp. at 533.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*

*v. New York*, 445 U.S. 573, 586 (1980). "A voluntarily given consent is an exception to the search warrant requirement and is therefore constitutionally permissible." *U.S. v. Velasquez*, 885 F.2d 1076, 1081 (3d Cir. 1989) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)). In determining whether consent was voluntarily given, a court must consider the totality of the circumstances. *See Schneckloth*, 412 U.S. at 227.

### III. Discussion

A. Initial Stop

The Court must first determine whether the officers had a valid basis for pulling over Mr. Franco-Felix. It is well-settled that stopping an automobile and detaining the occupant constitutes a seizure within the meaning of the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Warrantless automobile stops and detentions to check a driver's license and registration are permissible, however, when they are based on an "articulable and reasonable suspicion that . . . either the vehicle or an occupant" has violated the law. *Id.* at 663. Objective factors must support this belief, but an officer's subjective belief that the occupant may be engaged in some other illegal behavior will not make an otherwise permissible stop unconstitutional. *See Whren v. U.S.*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); *see also U.S. v. Delfin-Colina*, 464 F.3d 392, _ (3d Cir. 2006) ("[A] traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop.").

Here, Mr. Franco-Felix testified that he did not drive through a red light or commit any other traffic violations. He claims that he stopped behind another car at the intersection in question and did not proceed until the light turned green and the car in front of him drove through the intersection ahead of him. The only direct evidence demonstrating that he ran a red light is the

testimony of Officer Valentin, who claims that he personally observed Mr. Franco-Felix drive through a red light on the afternoon of September 7, 2011. It is uncontested, however, that members of the task force had been conducting surveillance of Mr. Franco-Felix for several days prior to September 7th and that officers followed Mr. Franco-Felix from his apartment to multiple other locations on September 7th before Officers Valentin and McCabe finally pulled him over on Central Avenue. It would make no sense for officers to spend days conducting surveillance of Mr. Franco-Felix only to ultimately pull him over for no reason at all. Therefore, the Court finds that the officers had cause to stop Mr. Franco-Felix for a limited period based on their reasonable suspicion that he had committed a traffic violation.

      B. <u>Consent to Search the Vehicle</u>

While the officers had a valid basis for stopping Mr. Franco-Felix, such legal justification only extends to the initial investigatory stop. *See U.S. v. Brignoni-Ponce*, 422 U.S. 873, 882 (1975) (after initial investigatory stop and limited questioning regarding suspicious circumstances, "any further detention or search must be based on consent or probable cause."). Because the government asserts that the vehicle search was based on consent, the Court must determine whether Mr. Franco-Felix voluntarily consented to the search of his vehicle. In so doing, the Court considers the totality of the circumstances. *Schneckloth*, 412 U.S. at 227.

With respect to the search of the vehicle's interior, Officer Valentin testified that he asked Mr. Franco-Felix if they could search the car and Mr. Franco-Felix replied "go right ahead." Mr. Franco-Felix disputes that he gave consent and claims that Officer Valentin ordered him to get out of the vehicle and searched the car's interior without ever asking him for permission. It is not necessary to decide whose version of the facts is more credible, however, because "the automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if probable cause exists to believe it contains contraband." *U.S. v. Burton*, 288

F.3d 91, 100 (3d Cir. 2002). Here, Officer Valentin testified that Mr. Franco-Felix appeared to be nervous and was attempting to conceal something between the seat and the console as the officers approached the vehicle, facts that Mr. Franco-Felix did not dispute. Thus, the Court finds that even if Mr. Franco-Felix did not give consent to search the car's interior, the officers had probable cause to believe that there was contraband in the vehicle and were entitled to conduct a search.

As for the trunk, it is uncontested that Officer Valentin told Mr. Franco-Felix that they intended to search his trunk and he then signed a form acknowledging his consent to that search.[6] Although Mr. Franco-Felix claims that Officer Valentin "forced" him to sign the consent form and that he was not given the option to refuse, "the prosecution is not required to demonstrate . . . knowledge [of the right to refuse] as a prerequisite to establishing a voluntarily consent." *Schneckloth*, 412 U.S. at 249. The individual's knowledge of his or her right to consent is merely one factor in the totality of the circumstances inquiry. *See Velasquez,* 885 F.2d at 1082. Here, Mr. Franco-Felix does not give any indication that he ever objected to the search. On the contrary, Mr. Franco-Felix testified that he gave Officer Valentin permission to conduct the search, stating that the officer "*asked me if he could search the vehicle and I said yes, he could do that,* when he had me sign the form." Tr. 71:20-23 (emphasis added). Moreover, the request to search was made on a busy street in broad daylight, after only a short period of detention. While the Court acknowledges that Mr. Franco-Felix may have felt nervous about the encounter, the environment was not coercive enough to vitiate the undisputed written and verbal consent that he provided. Accordingly, the Court finds that Mr. Franco-Felix voluntarily consented to the search of his vehicle and the physical evidence obtained from such search will not be suppressed.

---

[6] Mr. Franco-Felix claims the form was blank when he signed it, but it is undisputed that Mr. Franco-Felix knew the officers were going to search his trunk and that he was asked to sign the form "so that they could search the [trunk]." Tr. 57:9-18. Accordingly, whether or not the form was blank, Mr. Franco-Felix was aware that he was consenting to the search of the trunk.

C. Consent to Search the Apartment

The Court is not persuaded that Mr. Franco-Felix voluntarily consented to having the officers search his apartment. Although Officer Valentin testified that Mr. Franco-Felix gave verbal consent to the search and that he filled out the consent form with information regarding both the vehicle and the apartment prior to handing it to Mr. Franco-Felix, there is no additional evidence corroborating his claims. The government bears the burden of proof in this case, *see Santos*, 340 F. Supp. at 533, yet the only other witness to the traffic stop – Officer McCabe – did not testify. Without the benefit of Officer McCabe's testimony, we are only left with the testimony of Officer Valentin, which contained a number of discrepancies.

And even if Officer Valentin did ask whether they could search the apartment and fill out the consent form before handing it to Mr. Franco-Felix, it is well-settled that:

> [T]he existence and voluntariness of a consent is a question of fact, to be decided in the light of the attendant circumstances by the trier of facts. Critical factors of attendant circumstances include the setting in which the consent was obtained, what was said and done by the parties present with particular emphasis on what was *said by the individual consenting to the search, and his age, intelligence and educational background*."

*Harris v. Hendricks*, 423 F.2d 1096, 1099 (3d Cir. 1970) (emphasis added). Here, Officer Valentin has not testified about was what was said by Mr. Franco-Felix beyond short responses to the questions of where he lived and was coming from and one-word assents to the critical question of consent to search the apartment. In particular, Officer Valentin testified that he asked Mr. Franco-Felix if they could search his apartment to see if he had any more throw pillows. He claims that Mr. Franco-Felix simply said yes to this request *without asking a single question*, despite the fact that he was on his way to work at the time and the apartment was several miles away, in the opposite direction of his place of employment. The Court finds this implausible and

notes that Officer Valentin's testimony is directly contradicted by that of Mr. Franco-Felix.[7] In any event, Mr. Franco-Felix is not college-educated and does not speak English and the Court is not convinced that he understood what he was being asked.[8] Put another way, what Mr. Franco-Felix did and how he appeared do not square with that to which he purportedly consented.

Furthermore, consent obtained by a show of force, claim of authority or from a suspect held in custody suggests the presence of coercion. *See Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). Here, Officer Valentin ordered Mr. Franco-Felix to get out of the car and it is clear that Mr. Franco-Felix's freedom of movement was substantially constrained at the point he allegedly gave consent to search the apartment. Mr. Franco-Felix testified that he was not given the opportunity to read the form before signing and that Officer Valentin's hand was on his gun when he ordered him to sign the form. Thus, the Court finds that Mr. Franco-Felix did not understand what was being asked of him or only said yes in response to the officers' show of authority, not of his own free will. The warrantless search, conducted in the absence of exigent circumstances, required a clear expression of consent, which the evidence does not support.

Finally, the Court notes that it strains credulity to believe that Mr. Franco-Felix would have voluntarily agreed to accompany police officers and permit them to search an apartment containing large amounts of narcotics when he had been stopped for a minor traffic violation, for which the penalty typically amounts to a small fine. This scenario becomes even more implausible when coupled with the uncontested fact that Mr. Franco-Felix was on his way to work at the time of the traffic stop, there was no contraband in the vehicle, and the purported rationale

---

[7] The government argues that this case is similar to *Velasquez*, where the Third Circuit found that the defendant had voluntarily consented to a search of her vehicle under seemingly similar circumstances. However, in that case, the defense did not proffer any witnesses at the suppression hearing and there was no evidence contradicting the testimony of two police officers. By contrast, the defendant in this case has provided convincing testimony regarding the sequence of events and the government has put forth no evidence besides the testimony of a single officer.

[8] While Officer Valentin spoke in both English and Spanish, Mr. Franco-Felix testified that he did not understand everything that was said.

the officers gave for the search was to check to see if Mr. Franco-Felix had any other throw pillows in the apartment. The evidence considered in its totality leads the Court to conclude that the officers entered Mr. Franco-Felix's apartment without voluntary consent from Mr. Franco-Felix to do so. The fact that Mr. Franco-Felix, indeed, appears to have been involved in the illegal drug trade does not negate the fact that the officers' actions constituted a violation of Mr. Franco-Felix's constitutional rights. *See Bell v. Maryland*, 378 U.S. 226, 328 (1964) ("The worst citizen no less than the best is entitled to equal protection of the laws of his State and of the Nation."). Accordingly, the physical evidence obtained from the search of the apartment at 555 Mount Prospect Avenue will be suppressed.

### III. Conclusion

For the reasons above, Defendant's motion to suppress evidence seized from Mr. Franco-Felix's vehicle is denied. Defendant's motion to suppress evidence seized at Mr. Franco-Felix's apartment is granted. Defendant's motion to suppress statements obtained in connection with the search is denied as moot. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: January 16, 2013